Good morning, may it please the court. My name is David Porter. I'm an assistant federal defender from the Eastern District of California, and I represent the appellant Larry Chatman. The district court erred in two significant ways in this case. First, it used two wrong legal standards. It followed a Fourth Circuit case of Sosa, which held that equitable tolling is applied only in cases of profound mental incapacity. That is contrary to the Supreme Court's decision in Holland. It's contrary to a lot of this Court's precedent that talks about mental impairment or mental illnesses. And it also is contrary to – and the lower court also used the impossibility standard. We focused a lot of that in our brief. We focused on that particularly, and so I won't go into that unless the court has questions. But the court also erred in another way. And I don't think we spent enough time in this in our briefing. And I think the court erred by failing to accept as true for purposes of a motion to dismiss the well-plaid facts of the case. And I would point the court to our excerpt of record, the second volume at page 144, beginning at line 19, where it says, Because of my mental disorder, the antipsychotic medications I was taking to control the disorder, and my below normal IQ of 69, I was unable to research, prepare, and submit the habeas petition within the time constraints of the AEDPA. I'm sorry. I'm looking at this. Give me the page. I'm sorry. The supplemental, supplemental excerpts of record, the government's. Yeah, okay. Sorry about that. Their only volume. And it's SCR 144, beginning at line 19. Because of my mental disorder, the antipsychotic medications I was taking to control the disorder, and my below normal IQ of 69, I was unable to research, prepare, and submit the habeas petition within the time constraints of the AEDPA. Now, if that were the only thing he alleged, perhaps that wasn't enough. But it's clearly not. He alleged that he had four mental illnesses recognized by the DSM-IV. He had psychotic disorder, NOS. He was diagnosed with paranoid schizophrenic disorder, alcohol-induced persisting dementia, and alcohol abuse disorder. In addition, according to the CDC's own medical records, he was experiencing auditory hallucinations and sleep disorder, probably as a result of over-medication. He was prescribed 30 milligrams of Zyprexa. You say probably because that's you indicating rather than something from the record? That's correct. That's correct. Can I explain in my brief and footnote about the PDR's recommended dosage? I am not a psychiatrist, Your Honor. My mother and my uncle were prescribed a lot lower dosages of Zyprexa than 30 milligrams, and it had a profound ability. Yeah. That is your relatives are not before us. That is correct, Your Honor. And the point I'm trying to make is that the district court is not a psychiatrist as far as I know, doesn't have psychiatric experience either. The allegations of this complaint, just looked on their face, required the court to hold an evidentiary hearing. Well, the first prong has to do with severity, right? Correct. And so it isn't the amount that's – it isn't that he doesn't have problems. Everybody that goes to jail, especially for the type of crime that he committed here, has problems. That's how he got in there. So we have to look at the totality of everything, it seems to me, in the record to determine whether or not the factual finding by the district court on severity is – can be accepted. I agree. I agree totally, Your Honor. And the magistrate judge in this case said, okay, what's the totality of the circumstances? Looked on the other side to say, well, it's not so severe. And what the magistrate judge said was, look, he's reported I'm fine. There are several pages of the medical records where he is saying, I'm fine. I'm feeling better. The district court properly rejected that reasoning, saying – and I'm reading into this a little bit – but we don't trust the self-reported feelings of a psychiatrically ill patient about how he is, especially when on the other side you have these recognized diagnoses, you have the amount of medication that he's getting. And in addition to those two things, there was also the ad seg – he was in ad seg for a lengthy period of time from March 7th, 2007 to November 2nd, 2007. So I think this certainly met the pleading standard so that he could get to an evidentiary hearing. And I understand this is not immediately before us, but I have to say I could not help but sort of peek ahead. And I read through the ER so that I could try to understand what the IAC claim that I recognize that that's not immediately in front of me. On the other hand, somehow in the back of my head I want to know, okay, if we can get him to the merits, what's likely to happen? What's likely to happen is he's going to advance a claim that it was IAC that his lawyer didn't let him get on the stand. And the reason given by the lawyer for not letting him get on the stand to testify as to his version of what happened and, therefore, why it was self-defense was that the lawyer didn't want his prior convictions to come out. That's a lousy IAC claim. Bob. Your Honor, I think that the IAC claim is a little bit more complex than that. I think it involved his desire to have his – that there was a possible self-defense argument in this case. No, no. That's exactly the argument. He says there's a possible self-defense, and I'm the only one who can really give convincing testimony because the other people didn't see it very well. Right. But there – I think there were other avenues that he suggested for investigation that would have collaborated his version of the events that counsel also did not pursue. Yeah. Okay. Okay. And I recognize I'm just kind of peeking. Right. I understand, Your Honor. So what happened? When the district court judge rejected that basis of the magistrate judge's decision, that left Respondent to rummage through the record to try and find evidence that, okay, these mental illnesses were not so severe. Respondent came up with three items. The first two are unsigned statements, one submitted by Reverend Wyatt that said the Petitioner did some cement work for him. The other was an unsigned statement by Pastor LeBlanc saying that they read the Bible together. And the third item was that Mr. Chapman had fine penmanship, and that somehow undermined his claim of severe mental illness. So I would submit to the Court that that doesn't even get them to an evidence of the declarations that were submitted. So what's this evidentiary hearing going to do? We don't seem to have a lot of he said, she said. No. But we have absolutely no psychiatric expert testimony about how the tremendous amount of drugs that he was using, not only 30 milligrams of Zyprexa, but 100 milligrams of Zoloft, was affecting Mr. Chapman at the time. Do we know how long he was on that dosage before it was cut down? We do not. I do not, Your Honor. I think the records are not conclusive as to the later part of the statute of limitations. So he says he's stable on meds, but we don't know what the meds are. Is that what you're saying?  July of 08. That was, I think, the statute of limitations had already run by that point. It's March 6th, if that remains. So as to the point of diligence, the second prong of the bill's test, where they said rely on work of you rely on the work of other inmates at your own risk, well, we have bills itself saying that when you turn over – when Turner extorted more money for – from Mr. – Mr. Chapman to prepare the habeas petition, bills specifically covered this, where it says if legal help is available only because a prisoner has to resort to bribery or succumb to extortion, a prisoner does not – and that's not an easy thing to do.  And so I don't think that's what's going on. Let me understand your position. Are you asking for an evidentiary hearing as an alternative, or are you – or is that your principal argument? That is, do you want us to reverse the district court and say that the district court should have allowed equitable tolling on this record? I think the court could have – I think the court should have just held that equitable tolling applies on this record, Your Honor. My alternative argument is that there is certainly enough for an evidentiary hearing. And with respect to the merits again, is the sole claim on the merits that he should have been allowed to testify as to what happened? I thought there was also a claim that the counsel was ineffective with respect to investigating his mental condition and that more expert testimony at the trial might have affected the result in the case. The latter. That's absolutely correct, Your Honor. Only at the post-trial proceeding was Dr. Perviance's testimony entered into evidence concerning his longstanding state of mental illness. Was the mental illness issue raised already for IAC and the State court? I believe so. I don't think there's any claim here that the claim was unfair. No, no. What I'm after is, as I recollect, we've got a ruling from the State court on the question of investigation of mental health stuff. I don't recall that. Okay. Again, that's peeking ahead. Okay. Let's hear from the State. We've taken you over. We'll give you a minute in response. Thank you, Your Honor. Good morning. May it please the Court, this is Jill Thayer for Respondent. I'll just start where the Petitioner started off. And the district court did cite the magistrate, both magistrates, and the district court didn't cite bills, but both magistrate judges cited bills and applied the bill's standards. So there's no question that the district court applied the correct standards. I'm not sure that's right. They cite a standard from another circuit that's not our standard. Well, the magistrate, both magistrates cited bills. There's one sentence from SOSA, which is a Fourth Circuit case, that simply says, labeled it, it needs to be a profound mental incapacity. Bills says severe mental impairment. They're just labels. They're labels. Okay. The question is, did whatever their mental state, whatever their mental state, impairment, incompetence, incapacity, those are labels, did that prevent them from either understanding the need to timely file, and he concedes that that's not the issue, or personally preparing the habeas petition. And then part of that includes the ability to gain assistance. And throughout the record, he's demonstrated an ability to gain assistance. Throughout trial proceedings, he was filing numerous legal documents. And many of them you can see in the record are in his own handwriting. So then he said, well, I didn't really write those. Someone else wrote them, and I just wrote them myself. But there's an affidavit to that effect of one of the jailhouse lawyers says, I wrote it out, but he's got much better penmanship, so I had him actually do the handwriting. That's correct. So, but. Just because he wrote it in his hand doesn't mean that those are his words. Okay. But what are his words are the facts of what happened. Because the jailhouse lawyer couldn't have known what happened at trial and all of the information necessary to file those papers. He had to start it somehow. I mean, when you go to a lawyer, you have to say, these are the facts, this is what's happening, this is what happened or didn't happen at trial, I wanted to testify, and my trial attorney told me I shouldn't, on and on. So he has enough mental capacity and ability to understand those facts, those pertinent facts. And that is, that's important to understand. And he, during 2007, when he had the more mental problems, he was attempting to file a petition for review in the California Supreme Court. So at the same time, he's saying I'm mentally, whatever the word is, impaired, incapacitated. He's also occasionally filing legal documents and getting assistance in filing those legal documents. This is not a request for a factual admission from you. It's rather hypothetical. But if the facts of a case were such that someone is having fairly severe mental difficulties and he's heavily drugged, and as a result of the drugs, he's pretty much sedated most of the time, so that he sleeps maybe 20 hours a day, would that constitute ground for equitable tolling? I'd have to know the facts of the case, and what matters is what are the allegations in the petition, how long is he sleeping, 20 hours a day. Oh, over a year. How many years late is the petition? That's about two years. You know, it's a hard, that's a hard call to make. Well, let me ask you this then. Because this is so factual. Let me ask it this way. If someone is sedated to that degree by the medications he's taking, should he be excused during the period he is sedated to that degree? I'll say this. I do believe that the effects of, the sedating effects of medication for mental illness could potentially lead to mental incapacity or impairment. If that's the answer. Well, that's the purpose of a person severely depressed. That's what you try to do. They get them out of it. But there's nothing in the record that I've seen. We're looking at March 07 to January 10. That's the time period. And I didn't find anything in the record that he was being under heavy sedation during that three-year, totally during that three-year period. So the question is, at what point, at what point was the medication being decreased? And I don't find anything in the findings here of the judge or the magistrate judge on that issue. Well, my understanding from the question about medication effects was that that wasn't this case. Because he doesn't say in this case, I was so sedated I was unable to prepare the petition. Yeah, well, that's true. I just wonder what we do about what the district judge did to the magistrate judges. Because you find out how a person is feeling by asking him how they're feeling. And if they say, how are you feeling today, a medically trained physician is asking that for a question as a question of where they're going to lead to in the rest of it. So there's times in the record it talks about I'm fine, no problems, okay on meds, and things like that. But I'm not sure how that deals with the earlier rather severe dosages. I'm not sure either. And to be honest, I frankly didn't fully understand why the district court said it wouldn't rely on his own statements. Because you're correct. Subjective complaints. Right. If you say you're fine, we have to sort of take that at face value. But I'm left with what the district court will say. Listen to this as an anecdote, but merely as an anecdote. One of my college roommates after graduation from college became severely schizophrenic. And he was picked up off the streets of San Francisco, involuntarily hospitalized, and was asked by the doctor at intake, are you hearing voices? He said no. He told me later he said no because the voices told him to say no. I use that as an anecdote to make the larger point that I think has already been conceded here. You can't trust mentally ill people to give you a straight answer as to what their mental state is. That's a good point. And I'm sure there are plenty of mentally ill people who say I'm fine when they're not fine. And there are plenty of people who are not mentally ill for whom that's also true. Exactly. I say it all the time and very passive aggressively. How are you doing right now? I'm fine. I'm doing great. You just proved the point. You were smiling when you say I'm fine. That's the point. There was people, not you or me asking the questions, but people who have medical ability to read into that I'm fine what it really means. So I have difficulty with what does the district judge cut out because obviously my understanding is that what they said back and how it was read and their facial expression, et cetera, was part of the way they diagnosed. I think that's true, too. I think you have to ‑‑ it's a global assessment. And we have to throw in the fact that he's got an IQ of 69, right? Right. So there's multiple. And the record, I'm glad you didn't ask me too much about the record because it's extensive. And that's why I don't believe an evidentiary hearing is necessary. All of the records were available. There's no indication that there's other records. And the fact that he was filing various documents at various times is strong indication that any impairment he had was not so severe that it prevented him from filing a timely petition. Let me have you turn to another question. I know your time is running, but it's important to me. Very often these cases are tipped by the standard of review. That is, we set up these standards such that we give more deference in some cases, and the factual cases are the ones that we give the most deference. Obviously, there's good reasons for that. In this case, what is the standard of view that you say that we should be applying? The standard of review here is clearly erroneous. There's clear error. So we're going to look at this and determine whether or not the magistrate judge was clearly erroneous in his determinations. That is correct. Is there anything here? Was there live testimony? There wasn't. No, it was all on the record. So how do we get to clearly erroneous if it's all on the record? I mean, there's no fact-finding. There's no disputed testimony. It's just all pieces of paper. It's a factual issue, and so it's clear error. And that's what Bill says, that that's the standard for mental incompetence is clear error. Thank you. Mr. Porter, would you like a minute? Yes, please. As to the Warden's argument that these are just labels, words are incredibly important in this Court and to this issue. Incompetency is a term of art that's used in many different settings, and we've briefed that extensively, Your Honor. As far as the other people filing for him, we cited the First Circuit case of Riva v. Fico in our reply brief that says the district court erred when it said, look, he was able to get other people to file for him because the lower courts failed to consider the content and quality of those pleadings. Exactly the same thing in this case here. The point about him self-reporting, there is actually evidence in the record here that he dissembled when he was answering those questions because he didn't like the side effects of the drugs that he was being given. I think that that's very clear. And finally, with regard to the standard review, we briefed this. It is de novo the application of equitable tolling in these kinds of cases. As Judge Schroeder mentioned, there was no evidentiary hearing here. The only finding of fact that this was not a severe mental illness was based on the magistrate judge's findings about his self-reporting and was not adopted by the district court. So there are no factual findings here that I think are entitled to any deference. It's all on the record. I don't understand what you just told me. We say that we test it by the clearly erroneous standard. It's true that they didn't have people on the stand, but the judge was reading a record of what actually happened. And because of the very unique nature of what happens here in these kinds of cases, we have held that clearly erroneous is what we're going to test. Now, you're saying it should be otherwise. And what case of our circuit have you got that says that it would not be clearly erroneous? Having in mind we have cases say it is clearly erroneous. This Court reviews de novo a district court's dismissal of a petition for writ of habeas corpus as untimely, the case of Laws v. Lamarck. What page are you reading from? This is my opening brief at page 16. And it cites – and you cite what case? Laws v. Lamarck at 351 Fed 3rd, 919 at 922. Okay. 2003 decision. And that's from our circuit? Yes, sir. And what did they do with the other cases that say otherwise? Well, there are cases that say findings of fact made by a district court are to be reviewed for clear error. That is true. What I'm pointing out is that the finding of fact that the warden is relying on and the magistrate judge relied on about his self-reporting so that the mental illness was not so severe was not adopted by the district court. The district court's ruling is the ruling that this Court reviews for clear error. You're not conceding that the decision is not clearly erroneous, I take it? That's correct. Okay. I'm sorry. You gave me a page citation to Laws and I was not quite up with you. Could you give it to me again? Sure. On page 16 of our opening brief. Okay. I'm on page 16. Standard of review. Yeah. Laws v. Lamarck. Yeah. 351 Fed 3rd. 922. Correct. De novo dismission. Well, that precise sentence preceding Laws doesn't answer the question, but I can certainly look to Laws on 922. Okay. I got it. If there are no further questions, I would ask this Court to find that the unusual trifecta of severe mental illness, mental retardation, and lengthy administrative segregation. Before you leave us, in 16, right after the Laws case you cite to it, you say, findings of fact made by the district court are not to be reviewed, are to be reviewed by clear error. And the district court adopted quite a few findings from the magistrate judge. Are those findings to be reviewed for clear error? I don't believe so for the reason stated by Judge Schroeder, that there was no evidentiary hearing here, and these are not credibility determinations. But to the extent that the Court does find that these are findings of fact, the other ones that the magistrate, that the district court judge did not reject, I believe, are subject to the standard. Are there any cases that you found in your extensive research and preparation for this that deals with this issue? It comes up not infrequently. When prisoners are involved, they do have records, and it's usually the records that are used. Have we ever decided the issue of whether the review is clear error when there's only record evidence? Not that I know of, Your Honor. I would just point out that relying on severely, people at least who say that they are severely mentally ill, that those records are the full records of what they need to make a point is a very dangerous thing to do. Well, it may be very dangerous, but we have to have some way. We can't just pull it out of the air. And so I'm just asking, has it been decided yet in our circuit or any other circuit? Not that I know of, Your Honor. Okay. Thank you. Thank both sides for your helpful arguments. Chapman v. Hill is now submitted for decision.
judges: WALLACE, SCHROEDER, FLETCHER